IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. BLUE MARK STARR, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 17-cv-00189-CVE-TLW |
| ) | |
| 1. CITY OF PAWHUSKA, ) | |
| a public entity, ) | |
| ) | JURY TRIAL DEMANDED |
| Defendant. ) | ATTORNEY LIEN CLAIMED FOR |
| ) | THE FIRM |

## COMPLAINT

**COMES NOW,** the Plaintiff, Blue Starr ("Plaintiff"), through his attorney of record, Charles C. Vaught of Armstrong & Vaught, P.L.C. and brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, *et seq.* for racial discrimination and retaliation committed by Defendant.

## JURISDICTION AND VENUE

1. Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1367(a). In particular, jurisdiction is premised on a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

2. Declaratory and equitable relief are sought pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202, and compensatory and punitive damages are sought pursuant to 42 U.S.C. § 2000e, *et seq.*

3. Costs and attorneys' fees may be awarded pursuant to Rule 54 of the Federal Rules of Civil Procedure and the above statutes.

4. This Court has jurisdiction over the parties and the subject matter of this action, and this action properly lies in the Northern District of Oklahoma, pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

1

§ 1391(b), because the unlawful employment practices alleged herein arose in this judicial district.

5. Plaintiff is, and was at all times relevant hereto, a resident of the State of Oklahoma, residing in Pawhuska, Osage County, Oklahoma.

6. The acts and/or omissions giving rise to this lawsuit occurred in Osage County, State of Oklahoma.

7. In conformance with Title VII statutory prerequisites, Plaintiff submitted pre-charge information to the United States Equal Employment Opportunity Commission ("EEOC"). Subsequently, Plaintiff submitted a Charge of Discrimination to the EEOC. The EEOC completed its investigation and issued a Notice of Right to Sue on January 13, 2017 (attached as Exhibit A hereto and hereby incorporated by reference as though fully set forth herein).

8. Defendant is an employer as defined by 42 U.S.C. § 2000e(b), in that it was a public entity engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year

9. Plaintiff was at all times relevant hereto an employee as defined by 42 U.S.C. § 2000e (f), in that he was employed by an employer.

## OPERATIVE FACTS

10. Plaintiff is a member of a protected class, to wit: Native American.

11. Plaintiff was hired by Jerry Brown, Street and Sanitation Supervisor, with the City of Pawhuska, in January of 2013 to be a part of the "Street Crew."

12. On his second week at the Sanitation Department, Plaintiff, along with Arron Stone and Laramie King, were on break when Billy Dingman told a story about jail and said, "When they

put me in that cell there was the biggest fucking Osage I'd ever seen." Mr. Dingman looked at me while making that comment.

13. After this encounter with Mr. Dingman, Mr. King informed Plaintiff that Mr. Dingman typically makes those types of comments about "Osages."

14. Over the course of his employment, Mr. Dingman and Shane Brooks continually made racial slurs towards Native Americans (particularly members of the Osage tribe), African Americans and Hispanic people.

15. John Murdock, Plaintiff's African-American co-worker, complained of employees using derogatory words in his presence. Mr. Brown held a meeting instructing people to stop making derogatory statements towards Mr. Murdock or punishment would result. Mr. Dingman and Mr. Brooks continued to use derogatory terms and were never punished.

16. The racial slurs Plaintiff was subjected to included, without limitation, the following:

   a. Mr. Brooks, when informing Mr. Brown that the plumber, who is Sioux, was here to see him, identified the plumber as "the fucking Indian." Mr. Brown replied, "Oh, Jensen. He's been bitching about the brush pile behind his house. I better call him before he scalps me."

   b. Jody Revard, Plaintiff's Osage friend, came and paid to dump her trash. Mr. Dingman asked where the trash came from, to which Mr. Brooks replied, "some Indian bitch brought it by."

   c. Plaintiff was talking with Mr. King when he noticed Mr. Brown hopping from one foot to the other with his arms in the air right behind him. Mr. Brown looked at Plaintiff and said, "I'm doing a rain dance! Hay ya ya ya ya, Hay ya ya ya

      ya" while laughing. Plaintiff told Mr. Brown that his actions were racist. Mr. Brown brushed it off and said, "not it's not, I got Indian in me!"

    d. Plaintiff entered the shop one day and noticed Mr. Dingman reading a newspaper article about the Osage Nation buying the First National Bank building. Suddenly, Mr. Dingman shouted, "God dammit! Fucking Osages are buying up this damn town!" Mr. Dingman stood up, crumbled the newspaper and threw it across the shop.

    e. On September 17, 2015, Plaintiff, Troy Jester and Mike Stroud (Plaintiff's replacement) were discussing a trash truck with a flat tire. Mr. Stroud was going to drive the truck to the dumpster, facing the potential of a fine. Plaintiff wished Mr. Stroud luck for which he responded by staying "Hey Blue, I'll send ya some smoke signals on the moccasin telegraph, be lookin for them!"

17. Plaintiff reported the racial slurs and actions to Mike McCartney, the City Manager. Mr. McCartney insured Plaintiff that he did not condone this type of behavior and that it will be taken care of.

18. The next day, Plaintiff saw Mr. McCartney speaking to Mr. Brown and Mr. Dingman. Mr. Dingman apologized to Plaintiff and agreed to no longer make the racist comments. Mr. Brown pulled Plaintiff into his office and informed him that Mr. McCartney spoke with him regarding Plaintiff's complaint.

19. During the meeting with Mr. Brown, Plaintiff was accused of telling Mr. McCartney that Mr. Brown was a poor supervisor that allowed his employees to intimidate him. Plaintiff immediately responded by informing Mr. Brown that Mr. McCartney was the one who made those comments. Mr. Brown informed Plaintiff that Mr. McCartney instructed him to keep an

4

eye on Plaintiff and that he was a security risk. Plaintiff left the meeting by asking Mr. Brown make sure that the racial comments and slurs stop.

20. After that meeting, Plaintiff was ignored by Mr. Brown, Mr. Dingman and Mr. Brooks. When Plaintiff approached them while they were talking, they would stop talking until Plaintiff left or would go into Mr. Brown's office to continue their conversation.

21. Plaintiff filed a complaint with the EEOC after further slurs were made. When Mr. Brown discovered the complaint, he moved Plaintiff to the brush chipper with Mr. Jester and Mr. Murdock, and hired Mike Stroud to replace Plaintiff as a driver.

22. Shortly thereafter, Plaintiff walked by Mr. Stroud and Mr. Brooks while they were talking. Plaintiff heard Mr. Stroud say, "shoot, they wanna see a racist, I'll put on my cowboy hat and highway patrol sunglasses with my overall and drape that rebel flag over my old coondog if they wanna see racist."

23. On the same day, Plaintiff made a comment to Mr. Jester about being tired of chipping brush. Mr. Jester replied, "you know why you're chipping brush, don't you?" When Plaintiff said "no," Mr. Jester replied, "Because Jerry knows you hate it."

24. One day, Plaintiff was leaving for lunch, when he noticed two large dents on the hood of his truck. These dents were present earlier that morning when Plaintiff removed his cat from the hood of his truck. Plaintiff informed Mr. Brown of the damage, who offered to have it fixed.

25. Following Plaintiff's EEOC complaint, the EEOC poster that had been hanging in the warehouse was missing. When replaced, Plaintiff witnessed Mr. Brooks throwing knives at it. The new poster was slowly damaged until it fell to the floor and someone threw it away.

26. Plaintiff was riding with Mr. Brooks on the trash truck. When they arrived to the part of town they called "Indian Camp," Plaintiff noticed his aunt's trash was sitting out and had not been

collected. Mr. Brooks replied by saying, "fuck 'em" and kept driving. Plaintiff's aunt called him when they arrived back at the shop and asked that her trash come be picked up. Mr. Brooks shouted, "fuck that bitch! It wasn't out I ain't going back and getting it!" Mr. Stroud joined the conversation and Plaintiff informed him of the situation. Mr. Stroud responded with, "you better go get it, she's on the war path, she's a mean ol squaw and she's gonna scalp you! She'll have your hair hanging from her teepee pole!" Mr. Brooks, begrudgingly, and Plaintiff went to collect the trash. Mr. Stroup's parting remark to Plaintiff was, "Hey Blue, I'll be looking for your smoke signals, you know the ole moccasin telegraph!"

27. When Mr. Brown resigned, Chance Dingman ("Chance"), Billy's brother, replaced him.

28. Plaintiff was diagnosed with Gout in his big toe, and his new supervisor, Chance, allowed Plaintiff to work a different position which allowed him to sit down during the work day.

29. The next day, Plaintiff and Mr. McCartney had a heated discussion wherein Mr. McCartney cursed and yelled at Plaintiff, accusing him of sitting around all day. Plaintiff informed Mr. McCartney that he was sitting because of light duty restrictions. Mr. McCartney continued to scream at Plaintiff until Chance pulled Mr. McCartney into his office to calm things down.

30. Plaintiff informed Chance of the racial comments that had been happening around the warehouse over the past couple of months and that he had reported those comments to Mr. McCartney.

31. Following this discussion, Chance began to ignore Plaintiff or would single Plaintiff out for not wearing his safety vest or a uniform shirt, though no one else in the office complied with those rules.

32. On January 12, 2016, Plaintiff submitted a formal Grievance to Chance to address issues between Plaintiff and Chance. Plaintiff was suffering from a kidney infection and Chance was

6

not accommodating his need for a lighter workload. In fact, Chance simply ignored Plaintiff. The grievance also mentioned an altercation with Chance that resulted in Chance pushing and elbowing Plaintiff in the side.

33. On January 27, 2016, Plaintiff was terminated.

34. Plaintiff believes that he was discriminated against on the basis of his race, to wit, Native American, in violation of Title VII of the Civil Rights Act of 1964.

35. Plaintiff believes that he was retaliated against for his complaint of disparate treatment to Mike McCartney and the EEOC, in violation of Title VII of the Civil Rights Act of 1964.

## FIRST CLAIM
### (Race Discrimination in Violation of Title VII)

36. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

37. This claim is made against Defendant, City of Pawhuska.

38. That, as a member of a protected class, to wit: Native American, Plaintiff is protected by the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

39. That the disparate treatment of Plaintiff by Defendant and its employees and/or agents was a direct result of discrimination on the basis of his race, to wit: Native American, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

40. That Plaintiff was unfairly treated and that the motivating reason for this treatment is based on his race, to wit: Native American, as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*;

41. That Defendant ratified the acts of its agents and employees by failing to take remedial action upon notice by Plaintiff of the circumstances or by allowing the acts to occur after receiving actual or constructive notice of those acts;

42. That the conduct complained of constitutes illegal race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

   **WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff's be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

## SECOND CLAIM
### (Retaliation in Violation of Title VII)

43. Plaintiff incorporates and re-alleges the foregoing paragraphs as though fully set forth herein and would further state as follows:

44. This claim is made against Defendant, City of Pawhuska.

45. Plaintiff followed the proper procedures as an employee of Defendant in exercising his federally protected right to complain of the disparate treatment he was subjected to as an employee in Defendant's employ

46. Plaintiff reported the discrimination he was subjected to as an employee of Defendant to his supervisor and the EEOC.

47. As a direct result of Plaintiff's complaint, Defendant altered the terms, conditions and/or privileges of his employment by, among other retaliatory acts, terminating his employment.

48. As a direct result of Plaintiff's complaint, Defendant retaliated against Plaintiff for exercising his federally protected right to report the disparate treatment he was subjected to in the workplace.

**WHEREFORE**, Plaintiff prays that the Defendant appear and answer this Complaint, and that this Court: (1) declare the conduct engaged in by the Defendant to be in violation of Plaintiff's rights; (2) enjoin the Defendant from engaging in such conduct; (3) enter a judgment for Plaintiff in an amount in excess of $100,000.00 plus interest, costs, attorney fees, and compensatory and punitive damages as provided for by applicable law; (4) order Plaintiff's be reinstated to his former position, or receive front pay in lieu thereof; and (5) grant Plaintiff such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

**ARMSTRONG & VAUGHT, P.L.C.**

By: *s/ Charles C. Vaught*
**Charles C. Vaught, OBA #19962**
2727 East 21st Street, Suite 505
Tulsa, OK 74114
(918) 582-2500 – *telephone*
(918) 583-1755 – *facsimile*
***Attorney for Plaintiff***



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7010 0290 0000 2016 7964

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4701*
*Washington, DC 20530*

January 10, 2017

Mr. Blue M. Starr
12 Bombay Ave.
Pawhuska, OK 74056

Re: EEOC Charge Against City of Pawhuska
    No. 564201501290

Dear Mr. Starr:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice. If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney. If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above. A request for representation does not relieve you of the obligation to file suit within this 90-day period.

The investigative file pertaining to your case is located in the EEOC Oklahoma City Area Office, Oklahoma City, OK.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

by *Karen L. Ferguson*
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Oklahoma City Area Office, EEOC
    City of Pawhuska

Rec'd 1-13-17



EXHIBIT A